IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:22-cv-22432-BB**

HERIBERTO VALIENTE, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

STOCKX, INC.,

        Defendant.

**DEFENDANT STOCKX INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS LITIGATION AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................2

     A.    Plaintiff Agreed To The Terms And Arbitration Agreement When He First Created His StockX Account and Each Time Thereafter When Logged On To His Account and Purchased or Sold Goods on Stockx.com.............................2

     B.    The Terms Contain an Express Arbitration Agreement and Class Action Waiver and Mandate the Application of Michigan Law .........................................5

III.   ARGUMENT ..........................................................................................................7

     A.    The Court Should Compel Arbitration of All of Plaintiff's Claims .......................7

         1.    The FAA Establishes a Strong Policy Favoring Arbitration .......................7

         2.    Plaintiff Agreed to Arbitrate His Claims ....................................................9

         3.    Plaintiff Agreed to Delegate Gateway Issues of Arbitrability to the Arbitrator................................................................................................12

         4.    Plaintiff's Claims Falls Within the Scope of the Arbitration Provision ...................................................................................................15

     B.    The Court Should Dismiss This Case .................................................................16

IV.   CONCLUSION......................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Am. Gen. Ins.*
  688 Fed. Appx. 667 (11th Cir. 2017) ..................................................................................13

*Arndt v. Twenty-One Eighty-Five, LLC*
  448 F. Supp. 3d 1310 (S.D. Fla. 2020) ................................................................................9

*AT&T Mobility LLC v. Concepcion*
  563 U.S. 333 (2011) ..............................................................................................................8

*Babcock v. Neutron Hldgs., Inc.*
  454 F. Supp. 3d 1222 (S.D. Fla. 2020) ................................................................................7

*Bachewicz v. JetSmarter, Inc.*
  No. 18-cv-62570-BLOOM/Valle, 2019 U.S. Dist. LEXIS 71345 (S.D. Fla. Apr. 29,
  2019) ...................................................................................................................................12

*Bell v. Royal Seas Cruises, Inc.*
  No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273 (S.D. Fla. May
  13, 2020) .............................................................................................................................11

*Caley v. Gulfstream Aerospace Corp.*
  428 F.3d 1359 (11th Cir. 2005) ..........................................................................................16

*Capua v. Air Europa Lineas Aereas S.A. Inc.*
  2021 U.S. Dist. LEXIS 47759 (S.D. Fla. Mar. 15, 2021) ................................................7, 8

*Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*
  19 F.4th 873 (U.S. 6th Cir. 2021) .......................................................................................11

*In re Checking Account Overdraft Litig. (Citibank FSB)*
  2021 U.S. App. LEXIS 10025 (11th Cir. Apr. 7, 2021) ......................................................14

*Curbelo v. Autonation Benefits Co.*
  No. 14-62736, 2015 WL 667655 (S.D. Fla. Feb. 17, 2015) ................................................8

*Dasher v. RBC Bank (USA)*
  745 F.3d 1111 (11th Cir. 2014) ........................................................................................8, 9

*De Pombo v. IRINOX N. Am., Inc.*
  No. 20-cv-20533, 2020 U.S. Dist. LEXIS 86645 (S.D. Fla. May 18, 2020) ....................13

*Dean Witter Reynolds, Inc. v. Byrd*
  470 U.S. 213 (1985) ..............................................................................................................8

*Epic Sys. Corp. v. Lewis*
138 S. Ct. 1612 (2018) .................................................................................................8

*First Options of Chi., Inc. v. Kaplan*
514 U.S. 938 (1995) ....................................................................................................9

*Garcia v. Church of Scientology Flag Serv. Org., Inc.*
No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021) ...................................12

*Garcia v. Kendall Lakes Auto., LLC*
2019 U.S. Dist. LEXIS 50317 (S.D. Fla. Mar. 26, 2019) .......................................16

*Green Tree Fin. Corp. v. Alabama Randolph*
531 U.S. 79 (2000) ......................................................................................................8

*Healy v. Honorlock Inc.*
No. 21-81912-CIV-SMITH, 2022 U.S. Dist. LEXIS 117139 (S.D. Fla. June 29, 2022) ........12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
139 S. Ct. 524 (2019) ...........................................................................................13, 15

*Hicks v. Comcast Cable Communs., LLC*
No. 18-cv-61384-BLOOM/Valle, 2019 U.S. Dist. LEXIS 183989 (S.D. Fla. Mar. 27, 2019) ...............................................................................................................15

*Int'l Bhd. Of Elec. Workers Sys. Coucil U-4 v. Fla. Power & Light Co.*
627 F. App'x 898 (11th Cir. 2015) .........................................................................16

*Jones v. Waffle House, Inc.*
866 F.3d 1257 (11th Cir. 2017) ...............................................................................14

*Jones-Bey v. JPay Inc.*
No. 2:17-cv-12545, 2019 U.S. Dist. LEXIS 204963 (E.D. Mich. Oct. 10, 2019) ..................10

*JPay, Inc. v. Kobel*
904 F.3d 923 (11th Cir. 2018) .................................................................................14

*Kong v. Allied Prof. Ins. Co.*
750 F.3d 1259 (11th Cir. 2014) .................................................................................8

*Mamani v. Sanchez Berzain*
636 F. Supp. 2d 1326 (S.D. Fla. 2009) .....................................................................7

*Massage Envy Franchising, LLC v. Doe*
339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ...............................................................12

*Mazzoni Farms v. E. I. Dupont De Nemours & Co.*
761 So. 2d 306 (2000)..................................................................................................9

*Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*
  670 F. Supp. 2d 1350 (S.D. Fla. 2009) .......................................................................16

*MetroPCS Commc'ns, Inc. v. Porter*
  273 So. 3d 1025 (Fla. Dist. Ct. App. 2018) ...........................................................11, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983)........................................................................................................8, 16

*Preston v. Ferrer*
  552 U.S. 346 (2009)...........................................................................................................8

*Rent-A-Center, West, Inc. v. Jackson*
  561 U.S. 63 (2010)........................................................................................................8, 13

*Segal v. Amazon.com, Inc.*
  763 F. Supp. 2d 1367 (S.D. Fla. 2011) .......................................................................11

*Serrano v. Tuition Options, LLC*
  2018 U.S. Dist. LEXIS 106972 (S.D. Fla. June 27, 2018) .....................................13

*Shirley v. Rocket Mortg.*
  No. 2:21-cv-13007, 2022 U.S. Dist. LEXIS 119855 (E.D. Mich. July 7, 2022).....................9

*Sisca v. Hal Mar., Ltd.*
  No. 20-cv-22911-BLOOM/Louis, 2020 U.S. Dist. LEXIS 209722 (S.D. Fla. Nov. 9,
  2020) ...............................................................................................................................16

*In re StockX Customer Data Sec. Breach Litig.*
  No. 19-12441, 2020 U.S. Dist. LEXIS 241178 (E.D. Mich. Dec. 23, 2020) .........................11

*W. Sur. Co. v. Steuerwald*
  No. 18-10846, 760 F. App'x 810 (11th Cir. Jan. 16, 2019)...............................................9

*WasteCare Corp. v. Harmony Enters.*
  822 Fed. Appx. 892 (11th Cir. 2020), reh'g denied, No. 19-12066, 2020 U.S. App.
  LEXIS 29089 (11th Cir. Sept. 14, 2020) ....................................................................14

*Wright v. Greensky, Inc.*
  No. 20-cv-62441, 2021 U.S. Dist. LEXIS 110593 (S.D. Fla. June 14, 2021).........................14

## Statutes

9 U.S.C. § 1 ........................................................................................................... passim

9 U.S.C. § 2 ...................................................................................................................8

## <u>Other Authorities</u>

AM. ARB. ASS'N, CONSUMER ARB. RULES 17 (2020) ..........................................................14

Local Rule 7.1(a)(3)(B) ...................................................................................................17

Restatement (Second) of Contracts § 19(2) (1981) ....................................................10

Rule 12(b)(1)......................................................................................................................7

Pursuant to 9 U.S.C. § 1 *et seq.*, Defendant StockX Inc. ("StockX") hereby respectfully moves this Court to enter an Order: (i) compelling arbitration of Plaintiff Heriberto Valiente's ("Plaintiff") claims brought in the Class Action Complaint (ECF No. 1) ("Complaint"), as required by his binding arbitration agreement with StockX; and (ii) dismissing this case with prejudice.[1] In support, StockX states as follows:

## I.   **INTRODUCTION**

Plaintiff's Complaint must be dismissed and his claims compelled to arbitration because Plaintiff has expressly and repeatedly agreed that "any and all disputes or claims that have arisen or may arise between [him] and StockX shall be resolved exclusively through final and binding arbitration, rather than in court." (StockX Terms of Services ("Terms"), Exhibit 1, § 14.[2])

As discussed in greater detail below, to buy and sell items on the StockX platform—as Plaintiff admits he did—StockX users, like Plaintiff, must create a StockX account. (Declaration of Stephen Winn ("Winn Decl.") ¶ 7.) At the time of initial account creation, StockX users, including Plaintiff, are presented with a clickwrap agreement and required to manually and affirmatively check a box confirming their consent and agreement to the Terms. (*Id.* ¶¶ 8-10.) Thereafter, each time a StockX user logs in to his account to place a bid or ask for the purchase or sale of a product, the StockX user is required again to acknowledge his agreement to the Terms. (*Id.* ¶ 16.) Since the time of his account creation in 2016, Plaintiff has agreed to and acknowledged the Terms dozens and dozens of times. (*Id.* ¶ 20.)

---

[1] On September 27, 2022, the Court entered an order extending StockX's time to respond or otherwise move to dismiss the Complaint until 60 days following the entry of an order on StockX's Motion to Compel Arbitration (should any portion of it be denied). (ECF No. 23). As such, by filing this Motion, StockX does not waive any of its defenses or objections to the Complaint, and hereby reserves its right to file a subsequent motion to dismiss the Complaint should the Court deny this Motion.

[2] A copy of the operative Terms is attached to the Winn Declaration as Exhibit 1.

The Terms to which Plaintiff affirmatively and repeatedly agreed contain an express agreement to arbitrate, on an individual, non-class basis, "any and all disputes or claims" between Plaintiff and StockX arising out of the Terms or Plaintiff's use of the StockX platform and services provided thereby. (*See* Exhibit 1, § 14.) The agreement to arbitrate also explicitly delegates to the arbitrator all questions of arbitrability. (*Id*. § 14b ("Other than issues related to the class action waiver, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable."). Because Plaintiff's claims arise out of Plaintiff's use of the platform and services thereon, the proper agreed-upon forum for the adjudication of Plaintiff's claims (and any questions about the arbitrability of Plaintiff's claims) is arbitration. Thereby, StockX respectfully requests this Court enforce the parties' arbitration agreement and compel arbitration according to its terms.

## II.   FACTUAL BACKGROUND

**A.   Plaintiff Agreed To The Terms And Arbitration Agreement When He First Created His StockX Account and Each Time Thereafter When Logged On To His Account and Purchased or Sold Goods on Stockx.com.**

StockX provides an online platform—via www.stockx.com—that operates as a live marketplace where users can purchase and sell limited edition sneakers, watches, handbags, clothing, fashion accessories, and numerous other goods. (Complaint, ¶ 1; Winn Decl., ¶ 3.) Plaintiff admits in his Complaint that he "used the platform to buy and/or sell items on one or more occasions." (Complaint, ¶ 38; *see also id.* ¶¶ 39-41, 44.) Indeed, it is Plaintiff's use of Defendant's platform and the purchase of products thereon that provide the foundation for Plaintiff's claims against StockX. (*See, e.g.*, Complaint ¶¶ 54-58, 64-79, 87-90, 91.)

In order to buy or sell an item through the StockX platform (or even just place a "bid" or an "ask"), each user must create a StockX account and agree to the Terms. (Winn Decl., ¶ 7.) To create a StockX account, each user must complete the registration process, which involves manually and affirmatively checking a box confirming that he agrees to the Terms and Privacy Policy. (*Id.* ¶¶ 9, 11.) When a user, like Plaintiff, first registers for a StockX account, either on a web browser or mobile app, the user is immediately shown a "Sign Up" screen containing an unchecked, clickable box next to a message that states to the new user: "By signing up, you agree to the Terms of Service and Privacy Policy." (Winn Decl., ¶ 9; Exhibits 2 and 3.) The new user must affirmatively click the box to proceed. (*Id.* ¶ 11.) The phrase "Terms of Service" is an active hyperlink and is in a bold font in a different color from the surrounding text—clearly indicating that it is an active hyperlink that the user can click on to be directed to a copy of the Terms. (*Id.* ¶ 12.) When the user clicks on the Terms of Service hyperlink, he is taken to a new window within the browser containing the entire text of the then-current terms. (*Id.*)

Plaintiff first registered with and created a StockX account on December 3, 2016. (*Id.* ¶ 26.) At that time, the Sign Up page appeared as follows:



(*Id.* ¶ 10.) It would have been impossible for Plaintiff to use StockX.com without creating an account and following the signup process described above. (*Id*. ¶ 11.)  Plaintiff clicked the box next to the message that stated: "By signing up, you agree to the Terms of Service and Privacy Policy." (*Id.* ¶¶ 11, 14.)  As such, Plaintiff agreed to the Terms when he signed up for his StockX account, and had the opportunity to review the Terms prior to clicking the box and affirmatively consenting to those Terms. (*Id.* ¶ 14.)

Further, each time Plaintiff logged in and used his StockX account, he agreed to and acknowledged the then-current Terms and Privacy Policy. (*Id.* ¶ 16.) Specifically, Plaintiff was shown a login screen that said: "[b]y logging in, you agree to the Terms of Service and Privacy Policy." (*Id.*) Like the Sign Up screen, the words "Terms of Service" were a bold text that stood out from the surrounding text—clearly indicating that it contained a hyperlink that led to the complete text of the Terms. (*Id.* ¶ 18.) Thus, each time that Plaintiff logged in, he was required to affirmatively click the "Log In" button and again acknowledge his consent to the Terms. (*Id.* ¶¶ 16, 27.) Below is a copy of the StockX Account Log In screen that Plaintiff is (and was) presented with when logging into his StockX Account. (*Id.* ¶ 16.)



Since creating his account in 2016, Plaintiff has logged into his account and agreed to the Terms and Privacy Policy dozens upon dozens of times over the years (as he has participated in a little over 100 transactions—though, none of them involving NFTs). (*Id.* ¶ 20.)

**B.    The Terms Contain an Express Arbitration Agreement and Class Action Waiver and Mandate the Application of Michigan Law**

As explained in Section II.A above, Plaintiff expressly agreed to the Terms when he first created his StockX Account and each time thereafter when he logged into his account from 2016 to 2022. The Terms to which Plaintiff repeatedly agreed contain an express arbitration agreement that states, in pertinent part:

> You and StockX agree that any claim or dispute at law or equity that has arisen or may arise between us relating in any way to or arising out of the Terms or your use of, or access to, the Services, will be resolved in accordance with the provisions set forth in this Section 14. PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR RIGHTS AND WILL HAVE A SUBSTANTIAL IMPACT ON

HOW CLAIMS YOU AND STOCKX HAVE AGAINST EACH OTHER ARE RESOLVED. You agree that, except to the extent inconsistent with the Federal Arbitration Act ("FAA") or preempted by federal law, the laws of the State of Michigan, without regard to principles of conduct of laws, will govern these Terms and any claim or dispute that has arisen or may arise between you and StockX.
. . . .
**You and StockX each agree that any and all disputes or claims that have arisen or may arise between you and StockX relating in any way to or arising out of the Terms or your use of or access to the Services, shall be resolved exclusively through final and binding arbitration, rather than in court.** Alternatively, you may assert your claims in small claims court, if your claims qualify and so long as the matters remains in such court and advances only on an individual (non-class, nonrepresentative) basis. The FAA governs the interpretation and enforcement of this Agreement to Arbitrate.

IN ALL EVENTS, EACH PARTY HEREBY KNOWINGLY, VOLUNTARY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THESE TERMS OR YOUR USE OF OR ACCESS TO THE SERVICES. THE PARTIES FURTHER AGREE THAT, IF AND TO THE EXTENT THIS AGREEMENT TO ARBITRATION DOES NOT APPLY TO ANY CLAIM, THAT CLAIM WILL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

(Terms, Exhibit 1, § 14 (emphasis added).) The Terms admonish users that "[i]f you do not agree to these Terms, do not use the [StockX] Sites or any portion of the Services." (*Id*.)

Beyond encompassing any and all disputes that may arise between Plaintiff and StockX, the arbitration agreement also expressly delegates all questions of arbitrability to the arbitrator. (*Id*. § 14b.) Specifically, Section 14b states:

Other than issues related to the CLASS ACTION WAIVER, ***the arbitrator***, and not any federal, state, or local court or agency, **shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms** including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable.

(*Id*. (emphasis added).) That means, any questions regarding the scope of the arbitration agreement and whether it applies to the claims alleged by Plaintiff must be submitted in arbitration to the arbitrator to decide.

Further, Plaintiff has agreed to bring his claims "only on an individual basis," and "**not** as a Plaintiff or class member in any purported class, representative, or private attorney general action or proceeding." (*Id*. § 14a ("Prohibition of Class and Representative Actions and Non-Individualized Relief") (emphasis added).)

Finally, the Terms mandate the application of Michigan law, without regard to principles of conflict of laws. (*See id*. § 14 ("[T]he laws of the State of Michigan, without regard to principles of conflict of laws, will govern these Terms and any claim or dispute that has arisen or may arise between you and StockX."); *id* § 14b ("The arbitrator will decide the substance of all claims in accordance with the laws of the State of Michigan.").)

Since Plaintiff signed up for his StockX account in 2016, each version of the Terms has included a substantially similar mandatory arbitration clause, class action waiver, and choice of law clause. (Winn Decl.,¶ 21.) Thereby, each time Plaintiff logged into his StockX account he agreed to the arbitration agreement, class action waiver, and the application of Michigan law.

### III.   ARGUMENT

**A.   The Court Should Compel Arbitration of All of Plaintiff's Claims**

    **1.   The FAA Establishes a Strong Policy Favoring Arbitration**

"A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *Babcock v. Neutron Hldgs., Inc*., 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020).

"As such, the Court may consider matters outside the four corners of the Complaint." *Id.* at 1228 (citing *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009)).

"The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement." *Capua v. Air Europa Lineas Aereas S.A. Inc.*, 2021 U.S. Dist. LEXIS

47759, at *6 (S.D. Fla. Mar. 15, 2021).[3] The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). An agreement to arbitrate is generally "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Indeed, the Supreme Court has recognized that the FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

If there is a binding arbitration agreement, as there is here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *Curbelo v. Autonation Benefits Co.*, No. 14-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015) (Bloom, J.). On a motion to compel, "[t]he burden is on the party opposing arbitration to show that the agreement is not enforceable." *Green Tree Fin. Corp. v. Alabama Randolph*, 531 U.S. 79 (2000). And "any doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Dasher v. RBC Bank (USA),* 745 F.3d 1111, 1115 (11th Cir. 2014).

For the reasons discussed below, Plaintiff and StockX entered into a valid and binding arbitration agreement, and this Court, therefore, must compel Plaintiff's claims to arbitration according to the terms of the parties' agreement.

---

[3] The FAA is applicable both because the underlying contract is in writing and between citizens of different states affecting commerce, *see Kong v. Allied Prof. Ins. Co.,* 750 F.3d 1259, 1303 (11th Cir. 2014), and because the Terms specifically state that the FAA applies. (Terms, Exhibit 1, § 14 ("The FAA governs the interpretation and enforcement of this Agreement to Arbitrate.").); *see also Preston v. Ferrer,* 552 U.S. 346, 353 (2009) (applying FAA's procedural rules pursuant to choice of law clause).

### 2.    Plaintiff Agreed to Arbitrate His Claims

Under the FAA, state law principles governing the formation of contracts apply to determine whether the parties entered into an agreement containing an arbitration clause. *Dasher*, 745 F.3d at 1116 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In this case, the Terms contain a valid choice of law clause dictating that "the laws of the State of Michigan, without regard to principles of conflicts of laws, will govern these Terms and any claim or dispute that has arisen or may arise between you and StockX." (Exhibit 1, § 14.) Nevertheless, because this action was filed in the Southern District of Florida, Florida's choice-of-law rules govern the choice-of-law analysis. *See W. Sur. Co. v. Steuerwald,* 760 F. App'x 810, 815 (11th Cir. 2019) (finding that a federal court sitting in diversity applies the choice-of-law rules of the forum state). Under Florida's choice-of-law rules, "it is well-settled that Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020) (internal quotations omitted). "A choice of law provision in a contract is presumed valid until it is proved invalid. The party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof." *Arndt*, 448 F. Supp. 3d at 1315 (quoting *Mazzoni Farms v. E. I. Dupont De Nemours & Co.*, 761 So. 2d 306, 311 (2000)).

Here, there is no argument that the choice-of-law clause is invalid. Thus, Michigan law applies. However, as explained below, application of both Michigan *and* Florida law result in the *same* outcome.

<u>Michigan Law</u>

Under Michigan law, Michigan courts enforce clickwrap agreements. *See Shirley v. Rocket Mortg.,* No. 2:21-cv-13007, 2022 U.S. Dist. LEXIS 119855, at *11 (E.D. Mich. July 7, 2022) (enforcing

arbitration agreement and explaining that courts "have routinely found 'clickwrap' agreements enforceable because by checking a box explicitly stating 'I agree' in order to proceed, the consumer has received notice of the terms being offered and, in the words of the Restatement, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms.'") (quoting Restatement (Second) of Contracts § 19(2) (1981) at 856; *Jones-Bey v. JPay Inc.*, No. 2:17-cv-12545, 2019 U.S. Dist. LEXIS 204963, at *19 (E.D. Mich. Oct. 10, 2019) (enforcing clickwrap agreement).

Here, the Terms were presented to Plaintiff as a clickwrap agreement. As explained in Section II.A above, in order to create his StockX account and transact on StockX's platform—as Plaintiff admits he did (Complaint, ¶¶ 34-42)—Plaintiff had to affirmatively check the box on the "Sign Up" page confirming that he consented to the Terms and Conditions governing the use of the StockX platform and services. (Win Decl., ¶ 8.) And each time thereafter, when Plaintiff logged into his StockX account to make a purchase or sale on the platform he ratified that prior agreement and acknowledged again his agreement to be bound by the Terms. (*Id.* ¶¶ 16, 27.) Plaintiff admits that he is a StockX user, and admits he bought and sold items on the StockX platform. (Complaint, ¶¶ 34-42) (*see, e.g.*, "Plaintiff utilized Defendant's platform to engage in the purchase and/or sale of collectible sneakers and/or other items."). Thereby, Plaintiff admits, as StockX's records confirm, that Plaintiff accepted the Terms—***and the arbitration agreement***—when he first created his StockX account in 2016, and each time thereafter when he logged in or made a purchase or sale on stockx.com. (*Id.* ¶¶ 16, 27.) As a result, Plaintiff has entered into a binding agreement to arbitrate with StockX, and Plaintiff's claims must be compelled to arbitration.

In fact, the very clickwrap agreement at issue in this case was recently enforced by the Eastern District of Michigan against a group of consumer plaintiffs, like Plaintiff here, in *In re StockX*

*Customer Data Sec. Breach Litig.*, No. 19-12441, 2020 U.S. Dist. LEXIS 241178, at *4 (E.D. Mich. Dec. 23, 2020) (describing the identical process by which users create a StockX account thereby assenting to the Terms and the arbitration clause, and compelling arbitration). Further, the order compelling arbitration based on the *same* arbitration clause was affirmed by the Sixth Circuit in *Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*, 19 F.4th 873, 881 (U.S. 6th Cir. 2021) (finding that StockX "carried its burden" of establishing mutuality of agreement arising out of the online clickwrap agreement). There is no reason for a different result in this case.

*Florida Law*

In the context of online contracts, Florida courts have recognized that there are two main types of internet contracts, clickwrap agreements and browsewrap agreements. *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018) (citations omitted). "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Id.* "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Id.* Similar to Michigan law, Florida courts "generally enforce clickwrap agreements." *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *15 (S.D. Fla. May 13, 2020); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing clickwrap agreement where plaintiff failed to actually read the terms, and noting that in "Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts") (internal quotations omitted). As described above, the Terms (and arbitration agreement) plainly constitute a clickwrap agreement as defined under Florida law

(because Plaintiff must "click a box to acknowledge that [he] read those terms and conditions").

*See MetroPCS Commc'ns*, 273 So. 3d at 1028.

Clickwrap agreements such as the one used by StockX are routinely enforced in this district. *See, e.g.*, *Healy v. Honorlock Inc*., No. 21-81912-CIV-SMITH, 2022 U.S. Dist. LEXIS 117139, at *4 (S.D. Fla. June 29, 2022) (compelling arbitration where plaintiff had to "click a checkbox to agree to [defendant's] hyperlinked Terms of Service" which contained an arbitration clause); *Bachewicz v. JetSmarter, Inc.,* No. 18-cv-62570-BLOOM/Valle, 2019 U.S. Dist. LEXIS 71345, at *6-7 (S.D. Fla. Apr. 29, 2019) (compelling arbitration pursuant to clickwrap agreement) (Bloom, J.); *Massage Envy Franchising, LLC v. Doe,* 339 So. 3d 481 (Fla. Dist. Ct. App. 2022) (reversing trial court and compelling arbitration "because the [terms of use] . . .  was attached via hyperlink, and Doe was directed to give her assent to the [terms of use] by checking the 'I agree' box, [therefore] Doe was put on sufficient notice of its terms and conditions, including the binding arbitration condition, and that she manifested her assent to those terms and conditions by affirmatively clicking the box where indicated, thus creating a valid agreement").

Under both Florida and Michigan law, a valid contract containing an arbitration provision was formed between Plaintiff and StockX when Plaintiff registered for his StockX account and affirmatively checked the box to agree to the Terms and the arbitration agreement contained therein. For that reason, arbitration of Plaintiff's claims must be compelled (as discussed below).

###### 3.    Plaintiff Agreed to Delegate Gateway Issues of Arbitrability to the Arbitrator

Traditionally, on a motion to compel arbitration under the FAA, the court examines: (1) whether a valid arbitration agreement exists, and (2) if so, whether the dispute falls within the scope of the agreement. *See Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *6 (11th Cir. Nov. 2, 2021); *Anderson v. Am. Gen. Ins*., 688 Fed. Appx. 667, 669 (11th Cir. 2017). However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as

whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (contracting parties "may agree to have an arbitrator decide . . . gateway questions of arbitrability"). An agreement to arbitrate the gateway issue of arbitrability "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 69.

Where the arbitration agreement delegates the issue of arbitrability to the arbitrator, the Court must compel arbitration in the first instance and allow the arbitrator to decide if the claims fall within the scope of the arbitration agreement. *See id.* at 68. That is so "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*; *see also Serrano v. Tuition Options, LLC*, 2018 U.S. Dist. LEXIS 106972, at *5-6 (S.D. Fla. June 27, 2018) (enforcing delegation provision); *De Pombo v. IRINOX N. Am., Inc.,* No. 20-cv-20533, 2020 U.S. Dist. LEXIS 86645, at *21-22 (S.D. Fla. May 18, 2020) (same) (Bloom, J.).

Here, as discussed in the preceding Section, Plaintiff and StockX entered into a binding contract that contains an agreement to arbitrate, and, as part of that agreement to arbitrate, Plaintiff and StockX have explicitly agreed to delegate gateway issues of arbitrability to an arbitrator. Specifically, the arbitration agreement contains a delegation clause that provides, in pertinent part:

> the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable.

(Exhibit 1, § 14(b).) From this plain language, the Parties clearly and unmistakably agreed that the arbitrator—not this Court—should decide the question of whether Plaintiff's claims must be arbitrated (and they should). *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017)

(finding language stating that "Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement . . . clearly and unmistakably evinces the parties' intent to arbitrate all gateway issues").

But, beyond the express delegation clause, the Terms also state that "[t]he arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures." (Exhibit 1, § 14(b).) "[T]he incorporation of the AAA rules 'alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" *WasteCare Corp. v. Harmony Enters.*, 822 Fed. Appx. 892, 896 (11th Cir. 2020), reh'g denied, No. 19-12066, 2020 U.S. App. LEXIS 29089 (11th Cir. Sept. 14, 2020) (per curiam) (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018)). The AAA Rules state that "arbitrator shall have the power to rule on … any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." AM. ARB. ASS'N, CONSUMER ARB. RULES 17 (2020). The Eleventh Circuit and courts in this District uphold the AAA delegation clause. *See Larsen v. In re Checking Account Overdraft Litig. (Citibank FSB)*, 2021 U.S. App. LEXIS 10025, at *19 (11th Cir. Apr. 7, 2021); *Wright v. Greensky, Inc.*, No. 20-cv-62441, 2021 U.S. Dist. LEXIS 110593, at *47 (S.D. Fla. June 14, 2021) ("The incorporation of the JAMS and AAA rules and the Arbitration Provision's application of those rules to disputes brought under the Agreement 'clearly and unmistakably' indicates that the parties 'contracted to submit questions of arbitrability to an arbitrator.'") (quotations omitted) (Bloom, J.).

Given the existence of the express delegation clause, the Court should compel arbitration and allow the arbitrator to resolve any purported issues of arbitrability. *See Henry Schein,* 139 S. Ct. at 529.

**4.      Plaintiff's Claims Falls Within the Scope of the Arbitration Provision**

Even if Plaintiff and StockX had not agreed to delegate "gateway" issues of arbitrability to the arbitrator, there is no question that Plaintiff's claims fall within the scope of the arbitration agreement. The arbitration provision to which Plaintiff has repeatedly agreed is broad and all-encompassing: "You and StockX each agree that any and all disputes or claims that have arisen or may arise between you and StockX relating in any way to or arising out of the Terms or your use of or access to the Services, shall be resolved exclusively through final and binding arbitration, rather than in court." (Exhibit 1, § 14.); *see also Hicks v. Comcast Cable Communs., LLC,* No. 18-cv-61384-BLOOM/Valle, 2019 U.S. Dist. LEXIS 183989, at *23 (S.D. Fla. Mar. 27, 2019) (noting that using the language "any dispute" creates a broad scope in an arbitration agreement) (Bloom, J.).

Plaintiff's claims fall directly within the scope of the arbitration clause because the claims arise out of his use of StockX's platform and services and the representations made in the Terms themselves. (Complaint, ¶¶ 34-42 (*see, e.g.*, "Plaintiff utilized Defendant's platform to engage in the purchase and/or sale of collectible sneakers and/or other items" (*id.* ¶ 34); "Plaintiff chose to use Defendant's platform based on its assurances it would not just accurately confirm the authenticity of items he bought or sold, but that it verified the provenance of all items sold through its platform, which assured him his transactions would only involve authentic and non-counterfeit items" (*id.* ¶ 35); "Plaintiff believed and expected the Products bought and sold on the platform were 100% authentic without any counterfeits" (*id* ¶ 39).) Further, each of Plaintiff's claims alleges that he suffered harm because either the item purchased on stockx.com or the fee paid to sell or purchase an item on StockX was too high. (*Id.* ¶¶ 41-42.) Plaintiff's claims arise directly and

exclusively from StockX's Services and Terms. Thus, Plaintiff's claims fall within the scope of the arbitration agreement and must be compelled to arbitration.[4]

## B.      The Court Should Dismiss This Case

If all claims are subject to arbitration, then the case is properly dismissed. *See Garcia v. Kendall Lakes Auto., LLC*, 2019 U.S. Dist. LEXIS 50317 at **17–18 (S.D. Fla. Mar. 26, 2019); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009) ("A court may dismiss a case where it determines that the claims sued upon are arbitrable under the relevant agreement."); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (affirming dismissal where all claims were subject to arbitration). Here, there is a clear agreement to arbitrate between Plaintiff and StockX.  And Plaintiff and StockX have agreed to delegate all arbitrability questions. Further, all of Plaintiff's claims fall squarely within the scope of the arbitration agreement. Thereby, it follows that dismissal is proper in this case.

## IV.      <u>CONCLUSION</u>

For the foregoing reasons, StockX respectfully requests that this court grant its Motion to Compel Arbitration, uphold the class action wavier, and dismiss this case.

---

[4] Even if it was not plain that Plaintiff's claims fall squarely within the parties' arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Sisca v. Hal Mar., Ltd.*, No. 20-cv-22911-BLOOM/Louis, 2020 U.S. Dist. LEXIS 209722, at *9 (S.D. Fla. Nov. 9, 2020) (Bloom, J.) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.); *Int'l Bhd. Of Elec. Workers Sys. Coucil U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015) ("The presumption of arbitrability is 'particularly applicable' where an arbitration clause is broadly worded.") (citations omitted).

## **<u>CERTIFICATE OF GOOD FAITH CONFERRAL</u>**

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned counsel for StockX has conferred with opposing counsel regarding the relief sought in this Motion, and opposing counsel does not consent to the relief requested herein.

Dated:  October 3, 2022

<div style="margin-left:2em">

Respectfully submitted,

By:   */s/ Kari M. Rollins*
   Kari M. Rollins, Esq.
   Charles Glover, Esq.
   Sheppard Mullin Richter & Hampton LLP
   30 Rockefeller Plaza
   New York NY 10112
   Telephone: (212) 634-3077
   krollins@sheppardmullin.com
   cglover@sheppardmullin.com
   Admitted *Pro Hac Vice*

   */s/ Mark Schellhase*
   Mark Schellhase, Esq.
   Florida Bar No. 57103
   GrayRobinson, P.A.
   2255 Glades Road, Suite 301E
   Boca Raton, Florida 33431
   Telephone:  (561) 368-3808
   Facsimile:  (561) 368-4008
   mark.schellhase@gray-robinson.com

   *Attorneys For Defendant StockX Inc.*

</div>

-17-

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 3, 2022, a true and correct copy of the foregoing was filed

through the CM/ECF system which will send an electronic notification to all counsel of record on

the service list below.

<u>**SERVICE LIST**</u>
Will Wright, Esq.
The Wright Law Office, P.A.
515 N. Flagler Drive
Site P300
West Palm Beach, FL 33401
willwright@wrightlawoffice.com

Spencer Sheehan
Sheehan & Associates, P.A.
60 Cuttermill Road
Suite 412
Great Neck, NY 11021-5101
spencer@spencersheehan.com
*Pro Hac Vice Forthcoming

*/s/ Mark Schellhase*
Mark Schellhase, Esq.
Florida Bar No. 57103