IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:22-cv-22432-BB**

HERIBERTO VALIENTE, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

STOCKX, INC.,

        Defendant.

**DECLARATION OF STEPHEN WINN IN SUPPORT OF
DEFENDANT STOCKX INC.'S MOTION TO COMPEL
<u>INDIVIDUAL ARBITRATION AND DISMISS LITIGATION</u>**

I, Stephen Winn, declare as follows:

1. I am an employee of StockX Inc. ("StockX"). My current job title is Chief Product Officer. I have been employed by StockX since 2015. The matters set forth below are based upon personal knowledge or from review of records kept and made by StockX in the course of regularly conducted business activity. If called as a witness, I could and would testify to the facts contained herein.

2. This declaration is submitted in support of StockX's Motion to Compel Individual Arbitration and Dismiss Litigation.

3. StockX provides an online platform—via www.stockx.com–which is a live, online marketplace for buying and selling limited edition sneakers, watches, handbags, streetwear, and other goods. Buyers place "Bids," sellers place "Asks," and when a Bid and Ask meet, the transaction happens automatically–across a true market price. StockX does not determine the price at which items are bought or sold.

4. Based on my job responsibilities and my review of StockX's business records, I am familiar with StockX's agreements for its users and the processes by which StockX users are presented with and agree to accept StockX's applicable terms.

5. In connection with this matter, I was asked to review StockX's records of user accounts and activity to determine whether the named Plaintiff in this matter—Heriberto Valiente ("Valiente")—is a registered user of StockX.

6. I reviewed StockX's records (which are kept in the ordinary course of business) regarding the accounts for Valiente. I was able to confirm from these records that Valiente is a registered StockX user. From our records, Valiente created a StockX account on December 3, 2016.

7. While website visitors can browse the StockX website without creating an account, no StockX user can place bids or asks, or complete a purchase or sale without first creating an account on the website and agree to the StockX Terms and Conditions of Use ("Terms") and Privacy Policy. A true and correct copy of the current and controlling Terms are attached to this declaration as **Exhibit 1**.

8. To create a StockX account, StockX users, including Valiente, have to complete the registration process, which involves manually and affirmatively checking a box confirming that he agrees to the then-current version of the Terms and Privacy Policy.

9. When a StockX user, like Valiente, first registers for a StockX account, either on a web browser or mobile app, the user is immediately shown a "Sign-Up" screen containing an unchecked, clickable box next to a message that states to the new user: "By signing up, you agree to the Terms of Service and Privacy Policy." Each user, including

Valiente, then manually clicked on or "checked" the box and affirmatively agreed to the Terms of Service and Privacy Policy.

10. At the time of Valiente's account creation on December 3, 2016, the account creation userflow was substantially the same as the screenshot depicted in **Exhibit 2** hereto. The userflow displayed in Exhibit 2 would have been viewed by Valiente when he created his StockX account.

11. A user cannot advance to the next step and complete the StockX account registration process until the user affirmatively clicks the box displayed next to the message that expressly states: "By signing up, you agree to the Terms of Service and Privacy Policy."

12. As shown in the StockX Userflow Screenshot, the words "Terms of Service" and "Privacy Policy" are in blue—different colors from the rest of the text in that sentence, clearly indicating that they are active hyperlinks that the StockX user could click on to be directed to another webpage. By clicking on the "Terms of Service" hyperlink, an additional window immediately opens within the user's web browser containing the entire text of StockX's then-current Terms.

13. Whether on a mobile device or a computer, the entire screen depicted in the StockX Userflow Screenshot is visible at once and a user does not need to scroll beyond what is immediately visible to find notice of the Terms.

14. Valiente encountered the Terms when he signed up to create an account with StockX, and the Terms of Service were presented directly above the "Sign-Up" button.

15. Valiente had the opportunity to review the Terms prior to clicking on the box and consenting to the Terms to "Sign Up" for a StockX user account, as shown in the StockX Userflow Screenshot. Valiente manually clicked on or "checked" the box and

affirmatively agreed to the Terms of Service and Privacy Policy to sign up for and create his StockX user account.

16. Further, each time Valiente logged in and continued to use his StockX account (either via the mobile application or through the web browser), he would have been presented with a log-in screen, a true and correct screenshot of which is attached as **Exhibit 3**, that informed him that "[b]y logging in, you agree to the Terms of Service and Privacy Policy."

17. To login to his StockX accounts, Valiente was then required to manually and affirmatively click the button in the screenshot labeled "Log In" and again consent to the Terms of Service and Privacy Policy.

18. As shown in the screenshot, the words "Terms of Service" and "Privacy Policy" are in bold lettering and set apart from the rest of the text in that sentence, clearly indicating that they are active hyperlinks that Valiente could click on to be directed to another page. When a consumer clicks on the "Terms of Service" hyperlink, an additional window opens within the consumer's web browser containing the entire text of StockX's then-current Terms.

19. As such, Valiente continued to agree to StockX's then-current version of the Terms whenever logging into his StockX account and clicking the "Log In" button described above.

20. Since creating his account in 2016, Valiente has logged into his account and agreed to the Terms and Privacy Policy dozens upon dozens of times over the years (as he has participated in a little over 100 transactions—though, none of them involving NFTs).

21. Since Valiente signed up for his StockX account in 2016, each version of the Terms has included a mandatory arbitration provision, class action waiver, and a choice of law clause mandating application of Michigan law.

22. From time to time, StockX updates its Terms. As relevant here, StockX last updated its Terms on March 23, 2022. Consistent with StockX's previous Terms, the preamble of StockX's Current Terms also provide notice of the mandatory arbitration clause and class action waiver in bold, and expressly directs users where to find the full arbitration clause in the Terms of Service (Section 14):

> **By using our Sites and Services, or by clicking to accept these Terms, you accept and agree to be bound and abide by these Terms in full. If you do not agree to these Terms, do not use our Sites or any portion of the Services. For all purposes, the English version of the Terms shall be the original, binding instrument and understanding of the parties. In the event of any conflict between the English version of the Terms and any translation into any other language, the English version shall prevail and control.**
>
> **These Terms contain provisions that govern how claims between you and us are resolved (see Section 14, Disputes with StockX below). This includes an obligation to arbitrate certain claims through binding and final arbitration, unless you opt out of the arbitration when you sign up with us. Unless you opt out, you will only be permitted to bring claims against us and seek relief on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, and you will only be permitted to seek relief (including monetary, injunctive, and declaratory relief) on an individual basis. As set out in the Country-Specific Terms, this clause regarding arbitration will not apply to certain countries.**

23. Further, consistent with StockX's previous Terms, Section 1 of StockX's Current Terms ("Changes to Terms and Policies") provides, in pertinent part:

> StockX may in our discretion change these Terms (including the FAQs or any policy) at any time, but if we do, we will place a notice on our Site. We may also send you an email and/or notify you by some other means. Changes take effect on the date set out in the Terms. You should view these Terms often to stay informed of any changes that may affect you. YOUR CONTINUED USE OF THE SITE AND/OR SERVICES AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES. IF YOU DO NOT AGREE TO ANY OF THE CHANGES, YOU MUST CANCEL YOUR ACCOUNT AND NOT USE ANY PORTION OF THE SERVICES.

24.     Consistent with StockX's previous Terms, Section 14 of StockX's Current Terms contains a mandatory arbitration provision, class action waiver, and provides users with the option to opt out of the arbitration agreement:

14. Disputes with StockX.

If you are based outside of the United States, please refer to the Country-Specific Terms below.

You and StockX agree that any claim or dispute at law or equity that has arisen or may arise between us relating in any way to or arising out of the Terms or your use of, or access to, the Services, will be resolved in accordance with the provisions set forth in this Section 14. PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR RIGHTS AND WILL HAVE A SUBSTANTIAL IMPACT ON HOW CLAIMS YOU AND STOCKX HAVE AGAINST EACH OTHER ARE RESOLVED.

You agree that, except to the extent inconsistent with the Federal Arbitration Act ("FAA") or preempted by federal law, the laws of the State of Michigan, without regard to principles of conflict of laws, will govern these Terms and any claim or dispute that has arisen or may arise between you and StockX. Legal notices shall be served on StockX's national registered agent (in the case of StockX) or your email address on file with us (in your case). Notice by us to you shall be deemed given twenty-four (24) hours after the email is sent. Alternatively, we may give you legal notice by mail to any physical address you have on file with us. In such case, notice shall be deemed given three (3) days after the date of mailing, regardless of whether any such notice is returned to us. It is your responsibility to keep your contact information updated.

You and StockX each agree that any and all disputes or claims that have arisen or may arise between you and StockX relating in any way to or arising out of the Terms or your use of or access to the Services, shall be resolved exclusively through final and binding arbitration, rather than in court. Alternatively, you may assert your claims in small claims court, if your claims qualify and so long as the matters remains in such court and advances only on an individual (non-class, non-representative) basis. The FAA governs the interpretation and enforcement of this Agreement to Arbitrate.

IN ALL EVENTS, EACH PARTY HEREBY KNOWINGLY, VOLUNTARY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THESE TERMS OR YOUR USE OF OR ACCESS TO THE SERVICES. THE PARTIES FURTHER AGREE THAT, IF AND TO THE EXTENT THIS AGREEMENT TO

ARBITRATION DOES NOT APPLY TO ANY CLAIM, THAT CLAIM WILL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

a. PROHIBITION OF CLASS AND REPRESENTATIVE ACTIONS AND NON-INDIVIDUALIZED RELIEF (THE "CLASS ACTION WAIVER"). YOU AND STOCKX AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING. UNLESS BOTH YOU AND STOCKX AGREE OTHERWISE IN A SEPARATE WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, CLASS, OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S). ANY RELIEF AWARDED CANNOT AFFECT OTHER STOCKX USERS. IF A COURT DECIDES THAT APPLICABLE LAW PRECLUDES ENFORCEMENT OF ANY OF THIS PARAGRAPH'S PROHIBITIONS ON CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTIONS OR PROCEEDINGS AS TO ANY CLAIM, THEN THAT CLAIM (AND ONLY THAT CLAIM) MUST BE SEVERED FROM THE ARBITRATION AND RESOLVED IN COURT, SUBJECT TO YOUR AND STOCKX'S RIGHT TO APPEAL THE COURT'S DECISIONS. ALL OTHER CLAIMS WILL BE ARBITRATED.

b. Arbitration Procedures. Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, and court review of an arbitration award is very limited. However, an arbitrator can award the same damages and relief on an individual basis that a court can award to an individual. An arbitrator should also apply the Terms as a court would. All issues are for the arbitrator to decide, except that issues relating to the interpretation or enforceability of the CLASS ACTION WAIVER will be resolved by a court of competent jurisdiction. Other than issues related to the CLASS ACTION WAIVER, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable.

The arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures, including the AAA's Consumer Arbitration Rules (as applicable), as modified by this Agreement to Arbitrate. The AAA's Supplementary Rules for Class Arbitrations will not apply. The AAA's rules are

available at www.adr.org or by calling the AAA at 1-800-778-7879. The use of the word "arbitrator" in this provision shall not be construed to prohibit more than one arbitrator from presiding over an arbitration; rather, the AAA's rules will govern the number of arbitrators that may preside over an arbitration conducted under the Agreement to Arbitrate.

A party who intends to seek arbitration must first send to the other, by certified mail, a completed form Notice of Dispute ("Notice"), available by contacting us at https://help.stockx.com. A Notice to StockX should be sent to 1046 Woodward Ave., Detroit, MI 48226 or via email to legalsupport@stockx.com. StockX will send any Notice to you to the physical address we have on file associated with your StockX account; it is your responsibility to keep your physical address up to date. All information called for in the Notice must be provided, including a description of the nature and basis of the claims the party is asserting and the relief sought.

If you and StockX are unable to resolve the claims described in the Notice within 30 days after the Notice is sent, you or StockX may initiate arbitration proceedings. A form for initiating arbitration proceedings is available on the AAA's website at www.adr.org. In addition to filing this form with the AAA in accordance with its rules and procedures, the party initiating the arbitration must mail a copy of the completed form to the opposing party. You may send a copy to StockX at the following address: 1046 Woodward Ave., Detroit, MI 48226 attn: Legal Department. In the event StockX initiates arbitration against you, it will send a copy of the completed form to any physical address we have on file associated with your StockX account (or your email address if no physical address is on file). Any settlement offer made by you or StockX shall not be disclosed to the arbitrator.

The arbitration shall be held in the county in which you reside or at another mutually agreed location. If the value of the relief sought is $10,000 or less, you or StockX may elect to have the arbitration conducted by telephone or based solely on written submissions, which election shall be binding on you and StockX subject to the arbitrator's discretion to require an in-person hearing, if the circumstances warrant. In cases where an in-person hearing is held, you and/or StockX may attend by telephone, unless the arbitrator requires otherwise.

The arbitrator will decide the substance of all claims in accordance with the laws of the State of Michigan, including recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator shall not be bound by rulings in prior arbitrations involving different StockX users, but is bound by rulings in prior arbitrations involving the same StockX user to the extent required by applicable law. The arbitrator's award shall be final and binding, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

c. Costs of Arbitration. Payment of all filing, administration, and arbitrator fees will be governed by the AAA's rules, unless otherwise stated in this Agreement to Arbitrate.

d. Severability. With the exception of any of the provisions in the CLASS ACTION WAIVER, if an arbitrator or court decides that any part of this Agreement to Arbitrate is invalid or unenforceable, the other parts of this Agreement to Arbitrate shall still apply.

e. Opt-Out Procedure. If you are a new user of our Services, you can choose to reject this Agreement to Arbitrate by notifying us in writing that you opt-out ("Opt-Out Notice"). Your Opt-Out Notice must be postmarked no later than 30 days after the date you accept the Terms for the first time. You must mail your Opt-Out Notice to: StockX LLC, 1046 Woodward Ave., Detroit, MI 48226 attn: Legal Department.

Your Opt-Out Notice should state that you opt-out of this Agreement to Arbitrate and provide your name, address (including street number and address, city, state, and zip code), phone number and the email address(es) used to log in to the StockX account(s) to which the opt-out applies. You must sign and date the Opt-Out Notice for it to be effective. This procedure is the only way you can opt out of the Agreement to Arbitrate. If you opt out of the Agreement to Arbitrate, all other parts of the Terms will continue to apply. Opting out of this Agreement to Arbitrate has no effect on any previous, other, or future arbitration agreements that you may have with us.

f. Future Amendments to the Agreement to Arbitrate. Notwithstanding any provision in the User Agreement to the contrary, you and we agree that if we make any amendment to this Agreement to Arbitrate (other than a change to any notice address or website link provided herein) in the future, that amendment shall not apply to any claim that was filed in a legal proceeding between you and StockX prior to the effective date of the change. The amendment shall apply to all other disputes or claims governed by the Agreement to Arbitrate that have arisen or may arise between you and StockX. We will notify you of amendments to this Agreement to Arbitrate by posting the amended terms on http://www.StockX.com at least thirty (30) days before the effective date of the amendments and by sending notice via email to your email address on file with us. If you do not agree to the amended terms, you may close your account within the thirty (30) day period and you will not be bound by the amended terms.

25. StockX's Current Terms are also accessible via the hyperlink on StockX's homepage, https://stockx.com/, and directly at https://stockx.com/terms.

26. Valiente created his StockX account on December 3, 2016, and thereby, via the process described earlier, consented to the Current Terms when signing up for and creating his StockX account.

27. Additionally, because Valiente has continued to login to and use his StockX account and StockX services, he has continually consented to the Current Terms each time he logged into and accessed his StockX account via the login and consent process described above.

28. From our records, Valiente never opted out of the arbitration agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of October, 2022, at _____Detroit, MI_____.

DocuSigned by:

*Stephen Winn*

1AB2B6924E6E494...

Stephen Winn