UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-22432-BLOOM/Otazo-Reyes**

HERIBERTO VALIENTE,

     Plaintiff,

v.

STOCKX, INC.,

     Defendant.

_____/

**ORDER ON MOTION TO COMPEL**
<u>**INDIVIDUAL ARBITRATION AND STAY LITIGATION**</u>

    **THIS CAUSE** is before the Court upon Defendant StockX Inc.'s Motion to Compel Individual Arbitration and Dismiss Litigation, ECF No. [24] ("Motion"). Plaintiff Heriberto Valiente filed a Response in Opposition, ECF No. [27] ("Response"), to which Defendant filed a Reply, ECF No. [28] ("Reply"). The Court has carefully reviewed the Motion, all related submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

    Plaintiff initiated this class action against Defendant on August 2, 2022, by filing his Complaint. *See* ECF No. [1]. Plaintiff alleges Defendant: (1) violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) violated State Consumer Fraud Acts; (3) breached an express warranty, an implied warranty of merchantability/fitness for a particular purpose, and Magnuson Moss Warranty Act; (4) made negligent misrepresentations; (5) committed fraud; and (6) was unjustly enriched. *See generally id.*

    In the instant Motion, Defendant requests that the Court compel the parties to arbitration

and dismiss the case. ECF No. [24]. Defendant argues that Plaintiff agreed to the StockX Terms of Service ("Terms") when he created a Stock X account, which includes an arbitration provision directing the parties to resolve any and all disputes exclusively through arbitration ("Arbitration Provision"). Defendant further contends that Plaintiff acknowledged his agreement to the Terms each time he logged into his account. The Arbitration Provision states in relevant part:

### 14. Disputes with StockX

… You and StockX each agree that any and all disputes or claims that have arisen or may arise between you and StockX relating in any way to or arising out of the Terms or your use of or access to the Services, shall be resolved exclusively through final and binding arbitration, rather than in court. Alternatively, you may assert your claims in small claims court, if your claims qualify and so long as the matters remains in such court and advances only on an individual (non-class, non-representative) basis. The FAA governs the interpretation and enforcement of this Agreement to Arbitrate.

ECF No. [24-2] at 6.

Plaintiff responds that (1) Florida law must be applied; (2) the Arbitration Provision is not valid because the agreement constituted an improper browsewrap agreement which did not put Plaintiff on notice of the Terms; (3) unconscionability bars compelling arbitration; and (4) the issue of arbitrability should be decided by the Court. *See* ECF No. [27].

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366

(11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

Under Florida law, when presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011); *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004)

(citing *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

In addition, the Court of Appeals for the Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Once the movant satisfies its initial burden of showing there is no genuine issue of material fact, then "the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact." *Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1325 (11th Cir. 2021). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express,* 294 F.3d 1298, 1306-07 (11th Cir. 2002)). In determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at

213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### III. DISCUSSION

As noted above, Defendant requests that the Court compel Plaintiff to submit his claims to arbitration and dismiss the case. *See* ECF No. [24]. Plaintiff responds that (1) Florida law must be applied; (2) the Arbitration Provision is not valid because the agreement constituted an improper "browsewrap agreement" and Plaintiff was not put on notice of the Terms; (3) unconscionability bars compelling arbitration; and (4) the issue of arbitrability should be decided by the Court. *See* ECF No. [27].

#### A. Law to Be Applied

The Terms provide that "except to the extent inconsistent with the Federal Arbitration Act ("FAA") or preempted by federal law, the laws of the State of Michigan, without regard to principles of conflict of laws will govern these Terms and any claim or dispute that has arisen or may arise between you and StockX." ECF No. [24-2] at 7. Plaintiff argues that because he is challenging the very esitence of an agreement, Florida law must be applied. ECF No. [27] at 9. Defendant replies that there is a valid Michigan choice-of-law clause and under either Florida or Michigan law, the Court should find that Plaintiff and Defendant formed a valid contract. ECF No. [28] at 3.

Because there is a threshold issue of whether Plaintiff assented to the Terms, which includes the choice of law clause therein, Florida's law of contract formation applies to first determine the existence of a contract. *See First Options*, 514 U.S. at 943 ("When deciding whether

the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

> As this Court has previously explained and the Eleventh Circuit has affirmed,
>
> Florida courts have recognized two main types of internet contracts: (1) clickwrap agreements: 'when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions[;]' and (2) browsewrap agreements: 'when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions.'

*Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) (quoting *Bell v. Royal Seas Cruises, Inc.*, No. 19-cv-60752, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020) (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017))).[1]

## B. Validity of Agreement and Arbitration Provision

Defendant argues that Defendant clearly and conspicuously set forth the Arbitration Provision in the Terms and that Plaintiff affirmatively consented to the Terms. *See* ECF No. [24] at 7. Plaintiff responds that he was not adequately put on notice of the Terms. ECF No. [27] at 11. According to Plaintiff there was no agreement to arbitrate and, although Defendant contends the Terms were presented as a clickwrap agreement, Plaintiff contends the agreement is more properly considered a browsewrap agreement. *Id*. at 10. Plaintiff acknowledges and does not refute

---

[1] The Court recognizes that courts in this District have offered differing definitions of clickwrap and browsewrap agreements. *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 n.4 (S.D. Fla. 2020) ("[A] 'browsewrap' is an agreement where the user accepts a website's terms of use merely by browsing the site. A 'clickwrap' is an agreement where the user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." (citations omitted)). However, as noted above, the Court finds most persuasive the definition that this Court set forth and the Eleventh Circuit affirmed less than a year prior to this Order. *See Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022).

Defendant's statement that to create an account, each user must manually and affirmatively check a box confirming that he or she agrees to the Terms. *See id*. at 11. According to Plaintiff, he did not ratify the terms each time he logged into his account because the login screen constituted a browsewrap agreement that did not put him on sufficient notice. *Id*. The Court first considers whether the clickwrap agreement ratified by Plaintiff upon creating a StockX account was sufficient to put him on notice of the Arbitration Provision, creating a valid agreement.

### i.     Clickwrap Agreement

Defendant explains that in order to create an account with StockX, Plaintiff needed to affirmatively click a box indicating that he agreed to Defendant's Terms and Privacy Policy. ECF No. [24] at 18. Defendant argues that clickwrap agreements like that used by StockX are routinely enforced in this district. *Id*. Defendant attaches the Declaration of Stephen Winn which states that "no StockX user can place bids or asks, or complete a purchase or sale without first creating an account on the website and agree to the StockX Terms and Conditions of Use ("Terms") and Privacy Policy. To create a StockX account, StockX users, including Valiente, have to complete the registration process, which involves manually and affirmatively checking a box confirming that he agrees to the then-current version of the Terms and Privacy Policy." ECF No. [24-1] at ¶¶ 7-8. Plaintiff does not refute Defendant's argument. *See* ECF No. [27] at 11.

The Court agrees with Defendant that the website, depicted in relevant part below, required Plaintiff to click a box acknowledging that he read the terms and conditions prior to creating his account, constituting a clickwrap agreement.



ECF No. [24-3] at 2.

As Defendant articulates, the instant case is similar to *Bachewicz v. JetSmarter, Inc.*, where this Court considered a motion to compel arbitration where the plaintiff could not use defendant's services without becoming a member by clicking through a screen notifying her of the defendant's membership agreement and terms and consenting to be bound by them. *Bachewicz*, 18-CV-62570, 2019 WL 1900332, at *3 (S.D. Fla. Apr. 29, 2019). There, this Court determined that because the Plaintiff did not deny the existence of the membership agreement and the membership agreement contained an arbitration clause, there was a valid and enforceable agreement to arbitrate. *Id*. Similarly here, the Court points out that "In Florida and the federal circuits ... click-wrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006). That Plaintiff may not have actually read the Terms before affirmatively assenting to them is not dispositive. S*ee Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("The Plaintiff's admitted failure

to read the Participation Agreement does not excuse compliance with its terms.").

Accordingly, the Court finds there was a valid and enforceable clickwrap agreement containing the Terms and Arbitration Provision. The Court need not address Plaintiff's argument that the subsequent times he logged in he did not assent to the browsewrap agreement contained on the login page because the Court has already determined that Plaintiff agreed to be bound by the terms at the time he created his StockX account.

### C. Unconscionability

Plaintiff argues that unconscionability bars compelling arbitration because the Arbitration Provision was procedurally and substantively unconscionable. ECF No. [27] at 13-18. Defendant responds that the Court need not address Plaintiff's argument that the Arbitration Provision is unconscionable because there is an agreement to delegate all threshold issues of arbitrability and enforceability to the arbitrator. ECF No. [28] at 7. Defendant asserts that, regardless, the Arbitration Provision is neither procedurally nor substantively unconscionable. *Id*. Because unconscionability affects the validity of the agreement to arbitrate, the Court addresses Plaintiff's unconscionability arguments.

"Whether an arbitration provision is unconscionable is a question of state law and therefore the provision is interpreted according to state law rules of contract construction." *Aquino v. BT's on the River, LLC*, No. 20-CV-20090, 2020 WL 4194477, at *3 (S.D. Fla. 2020). "Both procedural unconscionability and substantive unconscionability must exist before the provision is unenforceable." *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989).

### i.    Procedural Unconscionability

Plaintiff contends that the Arbitration Provision was procedurally unconscionable because (1) it was presented as a take-it-or-leave-it condition of obtaining Defendant's services; (2)

Plaintiff never viewed the terms; (3) the terms were hidden in a maze of fine print and minimized; and (4) Plaintiff was unable to opt out of the arbitration provision. ECF No. [27] at 15-16. Defendant argues that each of Plaintiff's arguments fails factually and as a matter of law. ECF No. [28] at 8-10.

Procedural unconscionability focuses on "(1) the manner in which the contract was entered into; (2) whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract; and (4) whether he or she had a reasonable opportunity to understand the terms of the contract." *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006) (citing *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 288 (Fla. 1st DCA 2003).

### a.  Take-It-Or-Leave-It

Plaintiff first argues that the Arbitration Provision was procedurally unconscionable because it presented a take-it-or-leave-it question when Plaintiff obtained Defendant's services. ECF No. [27] at 15. Defendant counters that the Arbitration Provision contained an opt out provision and that Plaintiff's hollow allegation that the contract was take-it-or-leave-it is insufficient to render the Terms procedurally unconscionable. ECF No. [28] at 8. The Court agrees with Defendant.

Here, the Arbitration Provision included an opt out provision which reads:

Opt-Out Procedure. If you are a new user of our Services, you can choose to reject this Agreement to Arbitrate by notifying us in writing that you opt-out ("Opt-Out Notice"). Your Opt-Out Notice must be postmarked no later than 30 days after the date you accept the Terms for the first time. You must mail your Opt-Out Notice to: StockX LLC, 1046 Woodward Ave., Detroit, MI 48226 attn: Legal Department.

Your Opt-Out Notice should state that you opt-out of this Agreement to Arbitrate and provide your name, address (including street number and address, city, state,

and zip code), phone number and the email address(es) used to log in to the StockX account(s) to which the opt-out applies. You must sign and date the Opt-Out Notice for it to be effective. This procedure is the only way you can opt out of the Agreement to Arbitrate. If you opt out of the Agreement to Arbitrate, all other parts of the Terms will continue to apply. Opting out of this Agreement to Arbitrate has no effect on any previous, other, or future arbitration agreements that you may have with us.

ECF No. [24-2] at § 14(e).

Since the Court determined that Plaintiff assented to the terms of the Agreement when he created his account, it also finds that he was permitted to opt out of the agreement by following the specified procedure.

"Plaintiff's ability to opt out of the arbitration provision dilutes [his] unconscionability argument because the provision was not offered on a take-it-or-leave-it basis" *Losapio v. Comcast Corp.,* 1:10-CV-3438-RWS, 2011 WL 1497652, at *6 (N.D. Ga. Apr. 19, 2011). Therefore, the Court finds that Plaintiff fails to demonstrate that the Arbitration Provision was procedurally unconscionable because it presented a take-it-or-leave-it dilemma.

### b. Understanding the Terms

Plaintiff argues that he did not have the ability to understand the Terms because he never viewed them. ECF No. [27] at 15. Defendant contends that this argument fails as a matter of law because "'[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms, and conditions.'" ECF No. [28] at 8 (quoting *Quintana v. Transp. Am., Inc.*, 20-21300-CIV, 2021 WL 7368586, at *3 (S.D. Fla. May 10, 2021), *report and recommendation adopted,* 20-21300-CIV, 2022 WL 538167 (S.D. Fla. Feb. 23, 2022)). The Court agrees with Defendant. In order to create an account, Plaintiff was required to click a box affirming that he agreed to the Terms, and cannot now argue that he never read the Terms and therefore did not have the ability to understand them.

    c.  **Minimized Print**

Plaintiff argues that the Arbitration Provision is procedurally unconscionable because it was presented in small print and hidden in a maze of other fine print and minimized. ECF No. [27] at 15-16. Plaintiff points out that of the 41,800 words in the 36 pages of Terms, "only 980 words contained on less than one page, or less than 3% of the content, are devoted to the arbitration provisions." *Id*. at 15. Defendant responds that the size of the text of the Terms is irrelevant since Plaintiff has conceded that he did not read them, but also that the first page of the Terms contains bolded text alerting Plaintiff to the Arbitration Provision. ECF No. [28] at 8. That bolded text on the first page of the Terms reads:

> **These Terms contain provisions that govern how claims between you and us are resolved (see Section 14, Disputes with StockX below). This includes an obligation to arbitrate certain claims through binding and final arbitration, unless you opt out of the arbitration when you sign up with us. Unless you opt out, you will only be permitted to bring claims against us and seek relief on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, and you will only be permitted to seek relief (including monetary, injunctive, and declaratory relief) on an individual basis. As set out in the Country-Specific Terms, this clause regarding arbitration will not apply to certain countries.**

ECF No. [24-2] at 1. Defendant also notes that the arbitration provision itself contains bolded language stating "**PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR RIGHTS AND WILL HAVE A SUBSTANTIAL IMPACT ON HOW CLAIMS YOU AND STOCKX HAVE AGAINST EACH OTHER ARE RESOLVED**" keeping it from being hidden in a maze of fine print. ECF Nos. [28] at 8-9, [24-2] at § 14.

Defendant distinguishes the cases cited by Plaintiff in which Courts held that the provisions were in fine print or hidden making them procedurally unconscionable. *See Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 991 (Fla. Dist. Ct. App. 2004); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1160 (Fla. 2014). In *Palm Beach Motor Cars,* the Court found that "the only

reference to the terms on the back of the agreement, where the arbitration provision is printed, appears in the smallest type on the page and are barely readable." 885 So. 2d at 992. Here, by contrast the Arbitration Provision is referenced on the very first page of the Terms and the Arbitration Provision itself is preceded by bolded text advising that the section should be read carefully. In *Basulto*, the Supreme Court of Florida did not decide whether the arbitration provisions were unconscionable, but reiterated questions germane to the analysis of unconscionability including whether "the important terms were hidden in a maze of fine print." 141 So. 3d at 1160. Here, after reviewing the Terms, the Court determines that the Arbitration Provision was not minimized or hidden so as to make it procedurally unconscionable.

### d.  Opt Out

Plaintiff argues that his inability to opt out of the Arbitration Provision furthers his argument that the Arbitration Provision is procedurally unconscionable. ECF No. [27] at 16. Defendant responds that Plaintiff did have the ability to opt out. ECF No. [28] at 10. In light of the opt out provision quoted above, the Court rejects Plaintiff's contention that he was unable to opt out of the Arbitration Provision.

Because Plaintiff has not met his burden of demonstrating procedural unconscionability a requisite for finding unconscionability under Florida law, the Court declines to address Plaintiff's argument that the Arbitration Provision is substantively unconscionable.

### D.  Arbitrability

Defendant argues that Plaintiff agreed to delegate gateway issues of arbitrability to the arbitrator. ECF No. [24] at 18. Plaintiff contends that the Court must retain jurisdiction to decide arbitrability because the validity of the Arbitration Provision is in dispute. ECF No. [27] at 18. The Court disagrees. "The [Arbitration] Act allows parties to agree by contract that an arbitrator, rather

than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."
*Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 527 (2019). Thus, "[w]hen the
parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the
parties' decision as embodied in the contract." Id. at 528. Here, the Court has already found that a
valid agreement to arbitrate exists. Therefore, the Court looks at the language of the arbitration
clause to determine whether issues of arbitrability are reserved for the arbitrator in the first
instance.

Specifically, the Arbitration Provision contains a delegation clause that provides, in
pertinent part:

> the arbitrator, and not any federal, state, or local court or agency, shall have
> exclusive authority to resolve any dispute arising out of or relating to the
> interpretation, applicability, enforceability or formation of this Agreement to
> Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that
> all or any part of this Agreement to Arbitrate or the Terms is void or voidable.

ECF No. [24-2] at § 14(b).

The question of arbitrability is expressly delegated to the arbitrator and the Court declines
to retain jurisdiction to determine the question of arbitrability.

**E. Dismissal**

As a final matter, Defendant requests that the Court dismiss this case as all claims are
subject to arbitration. ECF No. [24] at 22. Plaintiff does not address Defendant's request for
dismissal in his Response. *See* ECF No. [27].

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration
upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable
'under ordinary state-law' contract principles and (b) the claims before the court fall within the
scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9

Case No. 22-cv-22432-BLOOM/Otazo-Reyes

U.S.C. §§ 2–4). Because Plaintiff's claims are subject to arbitration, the Court finds that dismissal of this action is appropriate. *See Garcia v. Kendall Lakes Auto., LLC*, 18-24397-CIV, 2019 WL 1359475 (S.D. Fla. Mar. 26, 2019) (finding that dismissal was appropriate where plaintiff's claims were subject to arbitration).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [24]**, is **GRANTED**.

2. The parties shall proceed to arbitration pursuant to the Arbitration Provision.

3. Plaintiff's claims against Defendant are **DISMISSED without prejudice.**

4. The Clerk of Court shall **CLOSE** the case.

5. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 9, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

15